IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DARLENE GIBBS, *et al.*,
*individually and on behalf of a class of*
*similarly situated persons,*

      Plaintiffs,

v.                             Civil Action No. 3:17cv386

KENNETH REES, *et al.*,

      Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Kenneth Rees's Motion to Transfer Case Under 28 U.S.C. § 1412 ("Rees's Motion to Transfer"), (ECF No. 92), and Defendant GPL Servicing's ("GPL") Motion to Transfer Case Under 28 U.S.C. § 1412 ("GPL's Motion to Transfer"), (ECF No. 111). All responses and replies have been filed. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. Accordingly, all matters are ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[1] For the reasons that follow, the Court will grant Rees's Motion to Transfer and GPL's Motion to Transfer. The Court will transfer this case to the District Court for the Northern District of Texas.

---

[1] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The First Amended Complaint alleges violations of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681 *et seq.*

## I. Factual and Procedural Background

### A.   Summary of Allegations in the Complaint

In their four-count class complaint, Plaintiffs challenge an allegedly predatory lending scheme developed and implemented by Defendants.  According to Plaintiffs, in an effort to circumvent Virginia and federal lending laws, Rees contacted members of two Native American tribes—the Chippewa Cree Tribe and the Otoe-Missouria Tribe (collectively, the "Tribes")—in order to establish "rent-a-tribe" enterprises.[2]  Plaintiffs contend that, through his rent-a-tribe schemes, Rees sought to "disguise Rees and his companies' roles and to ostensibly shield the scheme from liability" based on the Tribes' sovereign immunity.  (Compl. ¶ 2, ECF No. 1.)  Through these activities, Plaintiffs aver that Defendants made payday loans to people in Virginia with annual percentage rates that exceeded 400%.

### 1.   The Parties

All named plaintiffs are residents of Virginia who obtained loans online from Plain Green, LLC ("Plain Green") or Great Plains, LLC ("Great Plains").  Defendants' identities and relationships are slightly complex, but, according to Plaintiffs, "although Plain Green and Great

---

[2] So-called "rent-a-tribe" agreements

involve payday lenders offering tribes compensation to allow the company to organize under the tribe's name, while the lenders maintain functional control of the entity.  Typically, a payday lender will reorganize an existing company under a tribe's name in exchange for monthly payments to the tribe—usually a percentage of monthly profits.  These impoverished tribes often accept these arrangements; yet, they seldom get a significant cut of the amount of money generated by the tribal ownership of these companies.  Observers claim "most payday lenders have no physical presence on tribal land;" instead, they operate from call centers in distinct locations.  Affiliating under a tribe allows payday lenders to continue the harmful practices that regulators previously ceased and allows the company to escape state regulation completely or stall the process for years.

Petrovich, Heather L., Comment, *Circumventing State Consumer Protection Laws:  Tribal Immunity and Internet Payday Lending*, 91 N.C. L. Rev. 326, 342 (2012) (footnotes omitted).

Plains held themselves out as the actual lenders of these internet payday loans, Defendants marketed, funded, collected the loans, and controlled the day-to-day operations and major business decisions of Plain Green and Great Plains." (*Id.* ¶ 48.) Plaintiffs assert that Rees and others created Defendant Think Finance, Inc., ("Think Finance") "to locate, arrange[,] and funnel the lending capital to the Tribes." (*Id.* ¶ 14.) According to Plaintiffs, Think Finance "procured the investment capital for Plain Green and Great Plains," and "initially performed the application processing, underwriting, and customer service support for the loans." (*Id.*)

Defendants Think Finance SPV, LLC ("Think Finance SPV"), TC Decision Sciences, LLC ("TC Decision"), TC Loan Services, LLC ("TC Loan"), and Tailwind Marketing, LLC ("Tailwind Marketing") are all limited liability companies with principal places of business at the same address in Texas. Plaintiffs allege that each of these companies either performed some role in the lending scheme or served as a holding company for one of the other companies in an attempt to avoid liability. Specifically, Plaintiffs claim that, after several lawsuits, Rees conveyed all of Think Finance's assets and responsibilities to Think Finance SPV "in an effort to avoid liability for the illegal loans made to consumers." (*Id.*)

Tailwind Marketing was the "marketing and solicitation arm to disguise the involvement of Rees and Think Finance." (*Id.* ¶ 52.) Tailwind Marketing received $100 for every borrower provided to Plain Green and Great Plains. Plaintiffs assert that "this money ended up back in the pocket of Rees through his ownership interest in Tailwind." (*Id.* ¶ 55.) TC Loan was "the controlling member of Tailwind Marketing," and, according to Plaintiffs, its purpose was to "insulate Defendants from liability by adding an extra layer of corporate protection to the misconduct of Tailwind Marketing." (*Id.* ¶ 17.)

TC Decision was the "website operator and software administrator for Plain Green and Great Plains," and "handled customer service responsibilities, such as communications with consumers under the guise of Plain Green and Great Plains." (*Id.* ¶¶ 56–57.) TC Decision was paid five dollars per month for each active account with Plain Green and Great Plains. This money, too, "ended up back in the pocket of Rees through his ownership interest in TC Decision." (*Id.* ¶ 58.)

Defendant GPL Servicing ("GPL") is a corporation incorporated under the laws of the Cayman Islands. (Compl. ¶ 19.) Plaintiffs aver that all loans were assigned to GPL "within two days . . . for the purpose of servicing and collection." (*Id.* ¶ 19.) All payments for loans from Plain Green or Great Plains were made to GPL. Plaintiffs allege upon information and belief that Rees, Think Finance, "and several other individuals" own GPL and "incorporated the collection arm of the operation in the Cayman Islands in further attempts to avoid legal liability." (*Id.*)

Plaintiffs contend that Rees "was the architect of the lending scheme, participated in the day-to-day operations of the scheme, and controlled the businesses." (*Id.* ¶ 97.) According to Plaintiffs, Rees "established the plan and strategy" to create each of the defendant companies, and "established their role in the making, marketing, and collection" of the high-interest online loans. (*Id.* ¶ 30.) Further, Plaintiffs assert that "[a]s chief executive officer of Think Finance and the sole member of several other affiliated entities, Rees intentionally directed and personally participated in the creation, management, and operations of the tribal lending enterprises." (*Id.* ¶ 31.)

2.    **The Loans**

Each of Plaintiffs' loans ranged in amounts from $300 to $3,000, and had interest rates

from 118% to 448% and higher.[3] Each of the named Plaintiffs paid amounts on their loans

ranging from $566.82 to $15,399.04, "most of which Defendants credited as payment for interest

or other fees."[4] (*Id.* ¶¶ 76–80.) Plaintiffs declare that these loans are "null and void" under

Virginia law because the interest rates vastly exceeded the twelve percent APR limit Virginia

law places on contracts.[5] (*Id.* ¶ 75.)

3.    **The Class Claims**

Plaintiffs assert the following four class claims, each against all Defendants:

**Count One:**  **Violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c)** – Defendants collected "unlawful debts" from the Plaintiffs because the Defendants collected debts on loans that included an interest rate "far in excess of twice the enforceable rate in Virginia." Plaintiffs seek "treble their actual damages, which would include any interest, fees, or other sums collected by Defendants." (*Id.* ¶¶ 114–18.)

**Count Two:**  **Violations of RICO, 18 U.S.C. § 1962(d)** – Defendants "enter[ed] into a series of agreements to violate § 1962(c)." Plaintiffs seek actual damages, treble damages, costs, and attorneys' fees. (*Id.* ¶¶ 126–27.)

---

[3] Gibbs's loan agreement provided for an interest rate of 277.92%, and Williams's had an interest rate of 247.88%.

[4] Plaintiffs aver that they paid the following specific amounts on their loans: Gibbs paid $566.82; Edwards paid $15,399.04; Williams paid $1,774.56; Mwethuku paid $1764.56; and, Inscho paid $1,048.53.

[5] Gibbs's 277.92% interest rate is more than twenty-three times the 12% rate authorized by Virginia law, and Williams's 247.88% rate is over twenty times the 12% rate.

**Count Three:** **Violations of Virginia Usury Laws** – Every loan Defendants made to the Plaintiffs used an interest rate over Virginia's statutorily permissible rate of twelve percent. Plaintiffs seek "an amount equal to the total amount of interest paid" over twelve percent interest, "twice the amount of such usurious interest that was paid in the two years preceding the filing of this action," costs, and attorneys' fees. (*Id.* ¶¶ 136–37.)

**Count Four:** **Declaratory Judgment** – Defendants violated Virginia's usury law, Virginia Code § 6.2-1541(A), and all loan agreements are therefore "void and unenforceable." Plaintiffs seek a "declaratory judgment that the loan agreements are void and unenforceable pursuant to § 6.2-1541(A)." In the alternative, Plaintiffs seek a declaratory judgment that the loan agreements' choice-of-law, forum-selection, and arbitration provisions are "void and unenforceable as a matter of public policy." (*Id.* ¶¶ 145–50.)

For Counts One and Two, Plaintiffs seek to certify a class that includes "[a]ll Virginia residents who executed a loan with Plain Green or Great Plains where the loan was originated and/or any payment was made on or after May 19, 2013." (*Id.* ¶¶ 107, 120.) For Count Three, Plaintiffs seek to certify a class of "[a]ll Virginia residents who executed a loan with Plain Green or Great Plains where *any* interest was paid," and a subclass consisting of "[a]ll Virginia residents who executed a loan with Plain Green or Great Plains where any interest was paid *on or after May 17, 2015*." (*Id.* ¶ 129 (emphases added).) Finally, for Count Four, Plaintiffs seek to certify a class of "[a]ll persons who . . . executed a loan with Plain Green or Great Plains [] when they resided or were located in Virginia, [] *which contained an interest rate greater than 12%*," and a subclass consisting of "[a]ll persons who . . . executed a loan with Plain Green or Great Plains [] when they resided or were located in Virginia, [] *which contained a choice-of-law provision, arbitration provision, or forum selection clause similar or identical to Plaintiffs[']*." (*Id.* ¶ 139 (emphases added).)

**B.     Procedural Background**

Plaintiffs filed their Complaint on May 19, 2017.  After several extensions of time, the

defendants filed a slew of motions seeking the dismissal, stay, or transfer of the entire action.

Defendants Think Finance, Think Finance SPV, TC Decision, TC Loan, and Tailwind Marketing

(collectively, the "Think Finance Defendants") and Rees each filed a Motion to Compel

Arbitration, (ECF Nos. 16, 26), a Motion to Dismiss for Failure to Join Indispensable Parties,

(ECF Nos. 18, 28), a Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim,

(ECF Nos. 20, 22), and a Motion to Transfer or Stay Pursuant to the First-to-File Rule, (ECF

Nos. 30, 24).[6]  GPL filed a Motion to Dismiss for Lack of Jurisdiction and Failure to State a

Claim, or, Alternatively, to Stay Proceedings and Compel Arbitration.  (ECF No. 47.)

On October 25, 2017, the Think Finance Defendants filed a Suggestion of Bankruptcy.

(ECF No. 87.)  The Think Finance Defendants stated that, on October 23, 2017, they had each

"filed voluntary petitions for relief pursuant to chapter 11 of Title 11[7] of the United States

Code," (the "Bankruptcy Case") in the United States Bankruptcy Court for the Northern District

of Texas (the "Bankruptcy Court").  (Sugg. Bankr. 1, ECF No. 87.)  The Think Finance

Defendants stated that they had "requested joint administration of the Bankruptcy Cases" in the

---

[6] Rees and the Think Finance Defendants filed separate motions, but largely joined each other's arguments pursuant to Federal Rule of Civil Procedure 10(c).  That rule provides that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."  Fed. R. Civ. P. 10(c).  Rees incorporated the Think Finance Defendants' Memoranda in Support of their Motion to Compel Arbitration and Motion to Dismiss for Failure to Join Indispensable Parties.  The Think Finance Defendants incorporated Rees's Memorandum in Support of his Motion to Transfer or Stay Pursuant to the First-to-File Rule.  Neither Rees nor the Think Finance Defendants adopted the other's reply briefs.  Both parties made separate arguments in support of their Motions to Dismiss for Lack of Jurisdiction and Failure to State a Claim.

[7] Chapter 11 permits reorganization of a debtor's business, rather than liquidation of all assets.  *See* 11 U.S.C. § 1101 *et seq.*

Bankruptcy Court. (*Id.*) Pursuant to 11 U.S.C. § 362(a),[8] the proceedings in this case against the Think Finance Defendants were automatically stayed.[9]

In the month of February 2018, the parties again filed numerous motions. (*See* ECF Nos. 89, 92, 94, 98, 100, 106, 111, 121.) Most relevant here, Rees and GPL each filed a Motion to Transfer Pursuant to 28 U.S.C. § 1412.[10] All pending motions are fully briefed and ripe for decision. On February 28, 2018, the Court held a status conference at which the parties apprised the Court, generally, of the proceedings in the Bankruptcy Court. At the status conference, the Court informed the parties of its intent to rule on the motions without hearing argument.

## II. Motions to Transfer Pursuant to 28 U.S.C. § 1412[11]

The Court will first address Rees's and GPL's Motions to Transfer Pursuant to 28 U.S.C. § 1412 (collectively, the "Motions to Transfer") because the Motions to Transfer could affect the relevance of many other motions. The Court finds that § 1412 applies in this case because

---

[8] Section 362(a) provides for the automatic stay of numerous proceedings against a party who has filed for bankruptcy protection. Most relevant here, § 362(a)(1) stays "the . . . continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was . . . commenced before the commencement of the case under [title 11], or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1).

[9] Accordingly, Think Finance's Motion to Compel Arbitration, (ECF No. 16), Motion to Dismiss for Failure to Join Indispensable Parties, (ECF No. 18), Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim, (ECF No. 20), and Motion to Transfer or Stay Pursuant to the First-to-File Rule, (ECF No. 30), are all stayed pursuant to 11 U.S.C. § 362.

[10] Section 1412 provides in full: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412.

[11] In ruling on a motion to transfer, a court may consider evidence outside the pleadings, but must "draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Sleepy Lagoon, Ltd. v. Tower Grp., Inc.*, 809 F. Supp. 2d 1300, 1306 (N.D. Okla. 2011) (citing *Huang v. Napolitano*, 721 F.Supp.2d 46, 48 n. 3 (D.D.C. 2010); *United States v. Gonzales & Gonzales Bonds and Ins. Agency, Inc.*, 677 F. Supp. 2d 987, 991 (W.D. Tenn. 2010)).

Plaintiffs' claims against Rees and GPL are "related to" the Think Finance Defendants' pending petitions for bankruptcy. Further, despite the significant progress of this case and Virginia's strong interest in protecting its citizens from conduct such as that alleged in the Complaint, the Court concludes that transfer of this case to the Northern District of Texas is in the interest of justice.

### A. The Parties' Arguments

#### 1. Rees's Motion to Transfer

Rees filed his Motion to Transfer one week before GPL filed its similar motion. Rees requests this Court to transfer this action to the United States District Court for the Northern District of Texas (the "Texas District Court"), "where that court will refer the action to the Bankruptcy Court," to be consolidated with the Think Finance Defendants' pending bankruptcy petition.[12] (Rees Mem. Supp. Mot. Transfer 2, ECF No. 93.) According to Rees, Plaintiffs have already intervened in the bankruptcy cases by filing an adversary proceeding seeking relief against the Think Finance Defendants. Therefore, Rees argues, "obvious inefficiencies" would result from litigating the case both here and in the Bankruptcy Court. (*Id.* at 4.)

Rees further argues that transfer is appropriate because Plaintiffs' allegations against the Think Finance Defendants "are inextricably intertwined" with Plaintiffs' allegations against Rees, and because Plaintiffs' "theory of liability as against Rees [in this case] is the same as that as against Think Finance in the Bankruptcy Court." (*Id.* at 4, 5.) Finally, Rees contends that "a predecessor-in-interest to Debtor Think Finance, LLC[,] and Rees are parties to a Director Indemnification Agreement," and because of this agreement, all of Rees's legal fees, liability, or settlement "may ultimately end up back in front of the Bankruptcy Court for the purposes of

---

[12] In the alternative, Rees argues that the Court should transfer the case to the District of Vermont. In support, Rees refers to the arguments he made in his earlier-filed Motion to Transfer Pursuant to the First-to-File Rule.

indemnification and advancement." (*Id.* at 6, 7.) According to Rees, the indemnification agreement alone makes this case sufficiently "related to" the Bankruptcy Case to necessitate transfer.

In response, Plaintiffs contend that Rees's arguments regarding the indemnification agreements do not establish that this case is sufficiently "related to" the Bankruptcy Case to justify transfer to the Bankruptcy Court. (Pls.' Resp. Rees Mot. Transfer 5–6, ECF No. 110.) Plaintiffs further assert that, even if the matters sufficiently relate, neither the interest of justice nor the convenience of the parties favors transfer to the Bankruptcy Court.

First, Plaintiffs argue that the transfer Rees requests "does not guarantee that the case finds its way into bankruptcy court." (*Id.* at 6.) Plaintiffs argue that, because Rees requests a transfer to the *district* court, this case would only ultimately land in the Bankruptcy Court after a subsequent transfer from the district court. Further, Plaintiffs aver that judicial efficiency favors keeping the case in this Court. In support, Plaintiffs state that: (1) the Think Finance Defendants have moved to dismiss the Plaintiffs' adversary complaint in the Bankruptcy Court, so there is no certainty that this case would even be decided on the merits in that court; (2) the parties have briefed numerous motions and conducted voluminous discovery in this case, which would be disrupted by a transfer; and, (3) a transfer threatens to disrupt Plaintiffs' motion for class certification already filed in the Bankruptcy Court because "Rees will no doubt expect to have some role in the bankruptcy court's decision" of that motion. (*Id.* at 8–10.) Plaintiffs also argue that Virginia's interest in enforcing its citizens' rights and Plaintiffs' entitlement to deference to their choice of Virginia as a forum weigh against transferring the case. Finally, Plaintiffs contend that Rees has offered no evidence demonstrating that the convenience of the parties

weighs in favor of a transfer, and assert that Plaintiffs would suffer inconvenience if the Court transferred the case.

## 2. GPL's Motion to Transfer

One week later, GPL also moved the Court to transfer this action to the Texas District Court pursuant to 28 U.S.C. § 1412. GPL largely joins Rees's arguments in support of transfer under § 1412. GPL also attaches a copy of a "Guaranty and Security Agreement" (the "GSA") to which it and the Think Finance Defendants are parties. GPL contends that, pursuant to the GSA, GPL is entitled to indemnification from Think Finance and Think Finance SPV. Therefore, GPL argues that transfer under § 1412 is appropriate because this case sufficiently relates to the Bankruptcy Case and transfer serves the interest of justice and the convenience of the parties.

Plaintiffs advance different arguments in response to GPL's Motion to Transfer than they did in response to Rees's Motion to Transfer. Most notably, Plaintiffs argue for the first time[13] that § 1412 does not apply to this case because § 1412 applies only to cases "arising under chapter 11," which this case is not. Plaintiffs contend that principles of statutory interpretation require the Court to apply the statute's plain language because the language of § 1412 is unambiguous. Plaintiffs assert that this case does not "arise under" chapter 11, because it is brought under RICO and Virginia state law. Therefore, Plaintiffs assert, based on its plain language, § 1412 does not apply to this action. Plaintiffs urge the Court to reject Rees's and

_____

[13] In their response to Rees's Motion to Transfer, filed one week before their response to GPL's Motion to Transfer, Plaintiffs tellingly acknowledged, without arguing otherwise, "[t]hough the question is not by any means settled that the statute applies to cases first filed in district court (like this one) rather in bankruptcy, this Court has concluded that it does so long as the to-be-transferred case is 'related to' the bankruptcy case." (Pls.' Resp. GPL Mot. Transfer 4 (citing *Hilton Worldwide, Inc. Glob. Benefits Admin. Comm. v. Caesars Entm't Corp.*, 532 B.R. 259, 273 (E.D. Va. 2015).)

GPL's arguments that § 1412 allows transfer of all cases "related to" bankruptcy cases, and assert that the Court should evaluate the propriety of transfer under the general change of venue provision governing all civil actions, 28 U.S.C. § 1404.[14]

In the alternative, if the Court finds that § 1412 does apply here, Plaintiffs assert that GPL has not established that this case is sufficiently "related to" the Bankruptcy Case to warrant a transfer. Plaintiffs also argue that GPL has not established that the case could have been brought in the Northern District of Texas, a finding the Court must necessarily make to order transfer.[15] In either situation—whether the Court finds that § 1404 governs or that § 1412 governs— Plaintiffs aver that the appropriate factors, including convenience of the parties, judicial economy, and the interest of justice do not weigh in favor of transfer.

**B.    Section 1412, Not § 1404(a), Applies in this Case**

Before evaluating whether any factors weigh in favor of a transfer, the Court first addresses Plaintiffs' argument that § 1412 does not apply here because this case is not a

---

[14] Section 1404 provides, in relevant part, that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

[15] This assertion, of course, correctly pertains to a party seeking transfer under § 1404, which only authorizes transfer "to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1412, however, contains no such express requirement, and numerous courts have held that none exists. *See, e.g., Onewoo Corp. v. Hampshire Brands, Inc.*, 566 B.R. 136, 140 (Bankr. S.D.N.Y. 2017) (noting that "one big difference" between transfer under § 1404(a) and § 1412 is that "[u]nder Section 1404(a), transfer is not permitted unless the transferee district is one where the action 'might have been brought' in the first place, unless all parties consent to the transfer"); *Brown v. Wells Fargo, N.A.*, 463 B.R. 332, 336 (M.D.N.C. 2011) ("The only substantial difference [between § 1404 and § 1412] is that under 28 U.S.C. § 1404(a), venue may be transferred only to a district where the action might have originally been brought."); *City of Liberal v. Trailmobile Corp.*, 316 B.R. 358, 362 (D. Kan. 2004) ("The only substantial difference between the statutes is the additional requirement under § 1404(a) that an action may be transferred to any place where venue could have been valid originally.").

bankruptcy matter brought "under title 11." Plaintiffs posit that § 1412 does not apply because "§ 1412 unambiguously indicates that transfer under § 1412 only applies to bankruptcy cases." (Pls.' Resp. GPL Sec. 1412 Mot. Transfer 5.) Because "Plaintiffs' claims against Defendants were brought under RICO and Virginia law, and Plaintiffs do not assert any claims under the Bankruptcy Code. . . . , this is not 'a case or proceeding under title 11,' and thus, § 1412 is simply not applicable." (Pls.' Resp. GPL Sec. 1412 Mot. Transfer 5.) Defendants maintain that § 1412 applies instead.

Nationally, no appellate court has directly decided the issue,[16] but federal district courts diverge over whether § 1412 or § 1404(a) should govern transfer of actions "related to" bankruptcy proceedings.[17] That said, no similar disagreement exists within the Fourth Circuit.[18] Nearly a decade of intra-circuit cases have decided that § 1412 governs the transfer of "related to" cases brought under title 11. Indeed, district courts within this circuit have so held in

---

[16] As discussed more fully below, the United States Court of Appeals for the Fourth Circuit has held that a claim or action is "related to" a bankruptcy case when "the outcome of that proceeding *could conceivably have any effect* on the estate being administered in bankruptcy." *In re Celotex*, 124 F.3d 619, 625 (4th Cir. 1997).
    Furthermore, the United States Court of Appeals for the Third Circuit has also held that § 1412 would govern nonbankruptcy cases "related to" bankruptcy proceedings. *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1212 (3d Cir. 1991) ("Where a civil proceeding already pending in one district court becomes "related to" a chapter 13 case subsequently filed in another district court, the proper method for transferring the related proceeding to the bankruptcy court hearing the chapter 13 case is to seek a change of venue in the nonbankruptcy forum pursuant to 28 U.S.C. § 1412 . . . ."). In so holding, however, the Third Circuit did not undertake detailed analysis, and did not appear to be faced with arguments like those before the Court.

[17] Plaintiffs urge the Court to adopt the not-insubstantial reasoning of courts, including those in New York, Kansas, and California, which have held that the plain language of § 1412 forecloses any interpretation that § 1412 applies to cases "related to" cases brought under Title 11. As discussed below, the Court finds that the language, structure, and purpose of § 1412 dictate a finding that it applies to actions, like this one, "related to" bankruptcy proceedings.

[18] Rees and GPL argue that the Court should apply the reasoning and holdings from cases within this circuit, which have concluded that § 1412 applies not only to bankruptcy cases, but also to cases "related to" bankruptcy cases.

thoughtful, thorough, and persuasive grounds while examining contrary precedent, evaluating the nature of bankruptcy proceedings, and considering the statutory framework of transfer provision as a whole. Persuaded by the analysis in every court within the Fourth Circuit to examine the issue, and by the language and structure of § 1412 when viewed in the context of bankruptcy proceedings, this Court concludes that § 1412 applies not only to cases brought under title 11, but also to cases "*related to*" cases brought under title 11.

### 1. *Dunlap*: The Leading District Court Decision within the Fourth Circuit

The leading case within the Fourth Circuit, *Dunlap v. Friedman's, Inc.*, laid a strong analytical foundation when finding that § 1412, not § 1404, applied. 331 B.R. 674 (S.D.W. Va. 2005). Other courts have appropriately followed. In *Dunlap*, United States District Judge John T. Copenhaver, Jr., examined whether 28 U.S.C. § 1412 or 28 U.S.C. § 1404 applied to a class action complaint which, like this case, alleged state law violations, not violations arising under bankruptcy. 331 B.R. at 676. While acknowledging that district courts had split on "the choice between section 1412 and 1404(a) for change-of-venue purposes," *id.* at 677, the *Dunlap* court evaluated the decision reached by the leading bankruptcy treatise, the nature of bankruptcy proceedings, and the context of § 1412 within the transfer statutes as a whole before determining that § 1412 applied to the transfer considered, *id.* at 677–80.

First, *Dunlap* quoted with approval the conclusion from *Collier on Bankruptcy* that § 1412 governs changes of venue for both cases under title 11 and civil proceedings "'arising in or related to cases under title 11[,]' and stating further [that] '[a] few courts treat related claims and causes of action somewhat differently for change of venue purposes, a conclusion not to be recommended.'" *Id.* at 677 (quoting *Collier on Bankruptcy*, ¶ 4.04[1] (15th ed. rev. 2005)).

As to the nature of bankruptcy proceedings, the *Dunlap* court recognized the so-called "home court" presumption.[19] Observing that § 1404 would likely "thwart transfer" in many cases because "the related-to action might not have met, at the time of its filing, the jurisdictional or venue prerequisites making it capable of being 'brought' in the home court where the bankruptcy case is pending," as the text of section 1404 required, *id.* at 678, *Dunlap* suggested it unlikely that Congress intended to thwart transfer because "*[s]uch an outcome would dilute the well-settled presumption that 'related to' proceedings should be litigated in the 'home court,'*" *id.* at 678 (emphasis added) (collecting cases).

Finally, a thorough contextual analysis of the choice-of-venue statute that governed before § 1412, as well as an evaluation of § 1412 in conjunction with 28 U.S.C. § 1409 (enacted at the same time) convincingly undergirded *Dunlap's* determination that § 1412 "is the appropriate statute for venue transfer purposes" in the case.[20] *Id.* at 679–80.

---

[19] The home court presumption is a general rule in bankruptcy providing that a court in which the bankruptcy case itself is pending is the proper venue for adjudicating all related litigation, including those suits which have been filed in other state or federal courts. *See Dunlap*, 331 B.R. at 678 (citing cases).

[20] Plaintiffs argue that the plain language of § 1412 unambiguously references only "a case or proceeding under title 11," not cases "*related to*" proceedings under title 11. (Pls.' Resp. GPL Motion Transfer 5.) (citing *D.B. v. Cardall*, 826 F.3d 721, 734 (4th Cir. 2016)). According to Plaintiffs, the plain language is unambiguous, and the Court's analysis is therefore confined to that language, which forecloses applying § 1412 to any case not a "case or proceeding under title 11."

It is correct that statutory interpretation, in trying "to determine congressional intent," *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 35 (1990), must "begin, as always, with the language of the statutory text . . . [and i]n the absence of a definition from Congress, [the Court] accord[s] words in a statute their ordinary, contemporary, common meaning." *United States v. Midgett*, 198 F.3d 143, 145–46 (4th Cir. 1999) (internal citation and quotation marks omitted). But the *Dunlap* court recognized that "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). A court must therefore look to the statute as a whole in determining the meaning of individual words because "the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991); *see also Dole*, 494 U.S.

## 2. Other District Courts, Like this One, Have Been Persuaded by *Dunlap*'s Strong Rationale

Likely because of its thorough analysis, many cases within the Fourth Circuit addressing transfer of actions under § 1412 specifically rely upon the *Dunlap* decision when reaching the same result. *See, e.g., Huntington Nat'l Bank v. Hard Rock Expl., Inc.*, No. 1:16cv48, 2018 WL 935435, at *2 (N.D.W. Va. Feb. 16, 2018) (citing *Dunlap* for the premise that § 1412 "is the appropriate statute for venue transfer purposes in a related-to bankruptcy action" (quotation marks and alterations omitted)); *Hilton*, 532 B.R. at 273 (identifying *Dunlap* as "the leading case" in the debate about whether § 1404 or § 1412 governs transfer of actions "related to" a bankruptcy proceeding); *Brown v. Wells Fargo, N/A*, 463 B.R. 332, 337 (M.D.N.C. 2011) ("Though the Fourth Circuit has yet to weigh in on whether § 1404 or § 1412 should govern transfer of cases 'related to' bankruptcy, the Southern District of West Virginia thoughtfully analyzed the issue in *Dunlap v. Friedman's, Inc.*, 331 B.R. 674 (S.D.W. Va. 2005)."); *Coffey Creek Assocs.,Ltd. v. Guardian Prot. Svcs., Inc.*, No. 3:09cv295, 2010 WL 184902, at *2 (W.D.N.C. May 7, 2010) (noting that *Dunlap* "includes a detailed analysis of the choice between the § 1404 and § 1412 change of venue statutes"). And, despite Plaintiffs' criticism of the *Dunlap* court's reliance on "previous enactments of the statute and its legislative history," (Pls.' Resp. GPL Sec. 1412 Mot. Transfer 10), the Court finds no cases—and Plaintiffs cite to none—

___

at 35 ("[I]n expounding a statute, we are not guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.") (internal citation and quotation marks omitted).

Thus, evaluating the statute in the appropriate context, the *Dunlap* court correctly found that § 1412 clearly applies not only to bankruptcy cases, but to other civil cases "related to" bankruptcy cases. *See Dunlap*, 331 B.R. at 680 ("Because section 1409(a) uses the term 'proceeding' to include an action 'related to a case under title 11[,]' it lends strong credence to the notion that the word 'proceeding[,]' as used in section 1412, should be accorded the same breadth. If not, one is left to speculate what the term 'proceeding' actually means in section 1412.").

either within the Fourth Circuit or outside it, that similarly take issue with the reasoning in *Dunlap*. To the contrary, as noted above, numerous cases rely on the *Dunlap* decision and describe its analysis as detailed, thorough, and thoughtful.[21] This Court agrees.

In *Hilton*, a 2015 case within this district, the Honorable T.S. Ellis, III, Senior United States District Judge, identified that the debate continued in the "much-litigated question in the district courts, which appear to be divided on the issue" of whether § 1412 governs "related-to" actions. 532 B.R. at 272. In addition to relying on *Dunlap* to explain why § 1412 should apply, the *Hilton* decision noted that "the leading bankruptcy law treatise, Collier on Bankruptcy . . . reaches the same conclusion" as *Dunlap*. *Id.* at 273. Ten years of litigation since *Dunlap* had not altered Collier's position as to the applicable transfer statute. The *Hilton* court also relied on the "sensible principle that the court in which a bankruptcy proceeding is pending should be, if

---

[21] The Court has identified two cases within the Fourth Circuit, in addition to those already discussed, that rely on *Dunlap* in holding that § 1412 governs the transfer of related-to proceedings. *Miller v. Huntington Nat. Bank, N.A.*, No. 2:12-cv-01255, 2012 WL 4463877, at *2 ("A district court can change venue for a 'case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.'" (quoting 28 U.S.C. § 1412, and citing *Dunlap*, 331 B.R. at 680)); *Barnes v. Moffatt*, No. 2:06-0662, 2006 WL 3090908, at *1 (S.D.W. Va. Oct. 25, 2006) ("[S]ection 1412 governs transfer of venue for those categories of bankruptcy-related cases as well." (citing *Dunlap*, 331 B.R. at 680)).

The Court has also identified four cases that come to the same conclusion without relying on *Dunlap*'s detailed analysis. *Yolo Capital, Inc. v. Normand*, No. 1:17-cv-180, 2018 WL 576316, at *2 (W.D.N.C. Jan. 26, 2018) ("Section 1412 applies to the transfer of cases under Title 11 as well as cases 'arising under title 11, or arising in or related to cases under title 11.'") (quoting 1 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 4.05[1] (16th ed. 2017))); *Titus v. Smith*, No. 3:12cv21, 2012 WL 2255498, at *6 (N.D.W. Va. June 15, 2012) (transferring, pursuant to § 1412, plaintiff's action asserting claims of false imprisonment and intentional infliction of emotional distress to the court in which plaintiff's bankruptcy case was pending); *J.O. Flowe Grading Co., LLC v. Martin*, No. 1:09cv6, 2009 WL 10688285, at *5 (M.D.N.C. Nov. 18, 2009) (transferring, pursuant to § 1412, plaintiff's action asserting various tort claims to the court in which the defendant's bankruptcy proceeding was pending); *Blanton v. IMN Fin. Corp.*, No. 1:00cv873, 260 B.R. 257 (M.D.N.C. 2001) (transferring, pursuant to § 1412, plaintiffs' action asserting breach of contract claims to the court in which the defendant's bankruptcy proceeding was pending).

possible, the proper venue for all related litigation." *Id.* at 273 n.11.[22] Finally, the *Hilton*

decision noted that, "[a]lthough the Fourth Circuit has not expressly spoken on this issue, it has

hinted that § 1412 governs the transfer of 'related to' actions." *Id.* at 273 n.12 (citing *A.H.*

*Robins Co. v. Piccinin*, 788 F.2d 994, 1011 (4th Cir. 1986)).

This final observation is correct. In *Piccinin*, the only Fourth Circuit case addressing

§ 1412, the court assumed that § 1412 applied to cases "related to" bankruptcy proceedings.

That court stated in dicta that § 1412 would govern a district court's authority to transfer all

"cases *related to the bankruptcy proceedings*" other than "personal injury tort claims against a

debtor in Chapter 11 proceedings." 788 F.2d at 1011 (emphasis added). Thus, while it did not

decide the issue, the Fourth Circuit presumed that § 1412 governed bankruptcy cases and all

cases "*related to the bankruptcy proceedings.*" *Id.* (emphasis added).

This Court agrees with the thorough analysis of courts finding that § 1412 governs in

situations like this one, and understands why no federal district court in the Fourth Circuit has

found otherwise. For the reasons articulated above, the language of § 1412, properly considered

in the context of the statute as a whole, makes clear that § 1412 must apply to all cases "related

to" bankruptcy proceedings. The next question, therefore, is whether Plaintiffs' claims against

Rees and GPL are "related to" the Bankruptcy Case. The Court concludes that they are.

---

[22] Plaintiffs suggest that some aspect of the *Hilton* decision misconstrues bankruptcy law. Plaintiffs' expressed concern does not persuade this Court to disregard *Hilton*'s well-reasoned findings.

### 3. Plaintiffs' Claims against Rees and GPL Are "Related to" the Bankruptcy Case

#### a. Legal Standard

No party disputes the legal standard that governs the Court's determination of whether a case or claim is "related to" a bankruptcy proceeding.[23] In general,

> [a] civil case filed in a district court is related to a case in bankruptcy if the outcome in the civil case "*could conceivably have any effect on the estate being administered in bankruptcy* . . . if the out-come could alter the debtor's rights, liabilities, options, or freedom of action (positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."

*New Horizon of NY LLC v. Jacobs*, 231 F.3d 143, 151 (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995)). Importantly, this test "does not require certain or likely alteration of the debtor's rights, liabilities, options[,] or freedom of action, nor does it require certain or likely impact upon the handling and administration of the bankruptcy estate. The possibility of such alteration or impact is sufficient" for a case to be "related to" a bankruptcy case. *In re Celotex Corp.*, 124 F.3d at 626 (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). This broad interpretation of "related to" is consistent with congressional intent in enacting § 1334 "to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal

---

[23] The applicable definition derives from cases evaluating so-called "related to" jurisdiction" under 28 U.S.C. § 1334(b). That statute provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Plaintiffs argue that the scope of cases defined by § 1334(b) and those defined by § 1412 must differ based on each statute's plain language because "§ 1334(b) includes proceedings 'arising in or *related to* cases under title 11,' while § 1412 only encompasses 'a case or proceeding under title 11.'" (Pls.' Resp. GPL Mot. Transfer 7 (emphasis added).) Thus, Plaintiffs contend, "'Congress chose to use the term "related to" in conferring jurisdiction but not in establishing grounds for transfer of venue.'" (*Id.* (emphasis removed) (quoting *EnSource Invs. LLC v. Tatham*, No. 3:17cv79, 2017 WL 3923784, at *4 (S.D. Cal. Sept. 7, 2017)).)

As discussed above, the Court agrees with the other district courts holding that § 1412 applies to actions "related to" cases under title 11. Those cases naturally rely on the interpretation of "related to" in the context of § 1334(b), and the Court sees no reason not to do so as well.

efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex*, 514 U.S. at 308 (internal quotation marks and citation omitted); *see also New Horizon*, 231 F.3d at 150.

The parties diverge when applying the standard to the facts of this case. GPL and Rees both argue that when a party has an indemnification claim against a bankruptcy debtor for the judgment in a separate litigation, the separate litigation "would necessarily affect the [bankruptcy] estate," making it "related to" the bankruptcy case.[24] (GPL Reply Supp. Mot. Transfer 5, ECF No. 127; *see also* Rees Mem. Supp. Mot. Transfer 10 ("[E]ven when none of the parties in the district court action are debtors in the bankruptcy proceeding, the action may be 'related to' the bankruptcy proceeding if the bankruptcy debtor has an indemnification agreement with the defendant in the district court action." (citing *Virginia ex rel. Integra REC LLC v. Countrywide Sec. Corp.*, 92 F. Supp. 3d 469, 473 (E.D. Va. 2015))).)

Plaintiffs argue that "potential indemnification rights" are not always sufficient to make a controversy "related to" a bankruptcy case. They further assert that "Defendants provide no

---

[24] In Rees's Memorandum in Support of his Motion to Transfer, which GPL incorporates, Rees focuses in part on "the relation between" this case and the Bankruptcy Case. (Rees Mem. Supp. Mot. Transfer 10.) Rees appears to argue, at least in part, that Plaintiffs' claims against him in this case are "related to" Plaintiffs' claims against the Think Finance Defendants in the Bankruptcy Case, and, therefore, "any outcome resolving any of Plaintiffs' theories of liability against Rees here would . . . affect the likelihood of success as to the merits of the claims against the Debtors in the bankruptcy proceedings." (*Id.*) In their response to GPL's Motion to Transfer, Plaintiffs argue that "Defendants' suggestion that a favorable outcome in this Court may influence a favorable outcome in Plaintiffs' adversary proceeding against Think Finance is not sufficient to establish "related to" jurisdiction." (*Id.* at 14.)

Of course, a mere overlap in factual allegations alone cannot establish that an action is "related to" a bankruptcy proceeding, as the Fourth Circuit has defined that term. *See New Horizon*, 231 F.3d at 151 (stating that "the 'mere fact that there may be common issues of fact between a civil proceeding and a controversy involving a bankruptcy estate does not'" make the matter "related to" the bankruptcy case) (quoting *Pacor*, 743 F.2d at 994)). GPL's and Rees's strongest arguments that Plaintiffs' claims against them are "related to" the Bankruptcy Case center on the indemnification agreements each defendant has with the Think Finance Defendants. Accordingly, the Court addresses those contentions in detail.

explanation or proof of the effect of Think Finance's contractual obligation on the bankruptcy estate." (Pls.' Resp. GPL Mot. Transfer 14.) Plaintiffs aver that neither GPL nor Rees has "established that they are currently creditors to the Think Finance Bankruptcy Proceeding," and, regardless, any duty Think Finance has to indemnify either GPL or Rees "for future litigation" would not constitute a claim that could impact the Bankruptcy Case. (*Id.*) In short, because "Defendants have not established whether they have a prepetition claim against Think Finance in the Bankruptcy Proceeding for either contribution or indemnification," Plaintiffs contend that both GPL and Rees have failed to establish that this case is "related to" the Bankruptcy Case, and transfer under § 1412 is inappropriate. (*Id.* at 15.)

> **b.** **Plaintiffs' Claims against Rees Are "Related to" the Bankruptcy Case**

Rees attaches a Director Indemnification Agreement (the "Rees Indemnification Agreement") to his Motion to Transfer. The Rees Indemnification Agreement, dated September 1, 2005, is between Rees and PayDay One Holdings, Inc., ("PayDay One"). Rees states that PayDay One is a "predecessor-in-interest to Debtor Think Finance," and that the Rees Indemnification Agreement "obligates Think Finance to 'indemnify, defend, and hold harmless'" Rees for losses including civil expenses, liabilities, or judgments. (Rees Mem. Supp. Mot. Transfer 6 (quoting Rees Indemnification Agr. ¶ 2).) Rees also points to a provision of the Rees Indemnification Agreement entitling Rees to the "advancement . . . of any and all Expenses relating to any Indemnifiable Claim paid or incurred by" Rees. (*Id.* at 6 (quoting Rees Indemnification Agr. ¶ 3).) Accordingly, Rees argues that, under the Rees Indemnification Agreement, Think Finance, a debtor in the Bankruptcy Case, is contractually obligated to indemnify Rees for "all legal fees [he incurs], as well as any liability or settlement" in this case, making this action "related to" the Bankruptcy Case. (*Id.* at 7.)

The Rees Indemnification Agreement contains three provisions and three definitions particularly relevant to Rees's assertion that Think Finance is contractually liable to indemnify him for his expenses defending this suit, and for any liability he incurs in this suit. First, paragraph two of the Rees Indemnification Agreement states, in relevant part:

> [T]he Company shall indemnify, defend and hold harmless [Rees], to the fullest extent permitted by the laws of the State of Delaware in effect on the date hereof or as such laws may from time to time hereafter be amended to increase the scope of such permitted indemnification, against any and all Indemnifiable Claims and Indemnifiable Losses . . . .

(Rees Indemnification Agr. ¶ 2.) Second, paragraph three provides that "[Rees] shall have the right to advancement by the Company prior to the final disposition of any Indemnifiable Claim of any and all Expenses relating to any Indemnifiable Claim paid or incurred by [Rees] or which [Rees] determines are reasonably likely to be paid or incurred by [Rees]." (*Id.* ¶ 3.) Finally, paragraph fifteen states that "[t]his Agreement shall be binding upon and inure to the benefit of the Company and any successor to the Company, . . . (and such successor will thereafter be deemed the 'Company' for purposes of this Agreement), but shall not otherwise be assignable or delegatable by the Company." (*Id.* ¶ 15.)

The Rees Indemnification Agreement defines a "Claim" as, *inter alia*, "any threatened, asserted, pending or completed claim, demand, action, suit or proceeding, whether civil, criminal, administrative, arbitrative, investigative or other, and whether made pursuant to federal, state or other law." (*Id.* at (f).) And defines an "Indemnifiable Claim" as:

> [A]ny Claim based upon, arising out of or resulting from (i) any actual, alleged or suspected act or failure to act by Indemnitee in his or her capacity as a director, officer, employee or agent of the Company . . . , (ii) any actual, alleged or suspected act or failure to act by [Rees] in respect of any business, transaction, communication, filing, disclosure or other activity of the Company . . . , or (iii) [Rees]'s status as a current or former director, officer, employee or agent of the

Company . . . or any actual, alleged or suspected act or failure to act by [Rees] in connection with any obligation or restriction imposed upon [Rees] by reason of such status.

(*Id.* at (i).) Finally, "Expenses" are defined as "attorneys' and experts' fees and expenses and all other costs and expenses paid or payable in connection with investigating, defending, being a witness in or participating in (including on appeal), or preparing to investigate, defend, be a witness in or participate in (including on appeal), any Claim." (*Id.* at (h).)

In this case, Plaintiffs' claims against Rees depend on his involvement with the Think Finance Defendants. Plaintiffs allege that "[d]uring the pertinent times, Rees was the architect of the lending scheme, participated in the day-to-day operations of the scheme, and *controlled the businesses*." (Compl. ¶ 97 (emphasis added).) Plaintiffs claim, *inter alia*, that Rees "formed and used [the Think Finance Defendants and GPL] to engage in unfair, deceptive, and abusive acts that harmed Plaintiffs and the class members." (*Id.* ¶ 98.) They assert that Rees "directly and actively managed the activities" of the Think Finance Defendants and GPL, and that he "participated and knew of the actions of Think Finance in Virginia, which are the subject of this lawsuit." (*Id.* ¶¶ 101–02.)

Plaintiffs' allegations against Rees in this case are premised, at least in part, on actions he took "in his . . . capacity as a director, officer, employee or agent of" the Think Finance Defendants. Accordingly, this action against Rees is likely covered by the Rees Indemnification Agreement, making it "related to" the Bankruptcy Case. At the least, the "outcome in th[is] civil case '*could conceivably have an[] effect on the*'" Bankruptcy Case because Think Finance would likely be required to indemnify Rees of any liability in this case, thereby altering its liabilities.[25]

---

[25] Plaintiffs' contention that "potential indemnification rights" do not constitute a prepetition claim that would impact the Bankruptcy Case cannot prevail. Because "a claim will be treated as a prepetition claim for bankruptcy purposes even though it is merely contingent," if Rees's and GPL's claims for indemnification, even if merely contingent, would still qualify as

*New Horizon*, 231 F.3d at 151. Indeed, this case resembles the example the Supreme Court of

the United States identified in *Celotex* of a civil case "related to" a bankruptcy case: a "suit[]

between third parties which ha[s] an effect on the bankruptcy estate." *Celotex*, 514 U.S. at 307

n.5; *see also New Horizon*, 231 F.3d at 151. Accordingly, Plaintiffs' claims against Rees are

"related to" the Bankruptcy Case.

      c.      **Plaintiffs' Claims Against GPL Are "Related to" the
Bankruptcy Case**

GPL attaches to its Motion to Transfer the GSA, an agreement dated April 2, 2013,

between GPL, all the Think Finance Defendants, and several other parties. Under the GSA,

Think Finance and Think Finance SPV are required to indemnify GPL for

> any Losses which they may incur or be subject to as a result of or arising from . . .
> a Program, the Purchased Securities, the Underlying Loans and transactions
> otherwise contemplated by or further described in the Transaction Documents,
> including, without limitation, as a result of any litigation or administrative
> proceeding before any court, tribunal or governmental or administrative body
> presently pending or threatened against any GPL[] Indemnified Party . . . [except]
> to the extent that they arise from the willful misconduct, gross negligence,
> deceit[,] or fraud of GPL[].

(GSA ¶ 16(b).) Furthermore, GPL states that it has "filed counterclaims in an adversary

proceeding in the Bankruptcy Court and . . . filed 24 proofs of claim seeking indemnification

(among other things) from the debtors." (GPL Reply Supp. Mot. Transfer 2.) GPL attaches a

copy of the First Amended Answer it filed jointly with other defendants in an adversary

proceeding against the Think Finance Defendants in the Bankruptcy Court. In that Answer, GPL

and the other defendants filed five counterclaims, one of which seeks a declaratory judgment that

"[u]nder Sections 9(a) and 16(b) of the GSA, Counter-Plaintiffs are entitled to their attorneys'

---

prepetition claims that would impact the bankruptcy estate. *See In re Bentley Funding Grp.,
LLC*, No. 00-13386, 2001 WL 34054525, at *2–3 (Bankr. E.D. Va. Jan. 2, 2001) (citing *In re
Food Barn Stores, Inc.*, 175 B.R. 723, 728 (Bankr. W.D. Mo. 1994), and collecting cases holding
that claims based on indemnification agreements entered into before the indemnor files for
bankruptcy constitute prepetition claims against the bankruptcy estate).

fees and expenses incurred in connection with, among other things, this bankruptcy, this adversary proceeding, and the Lawsuits." (Answer ¶ 123, ECF No. 127-1.) "Lawsuits" as defined in GPL's answer, includes "five separate actions . . . brought against Victory Park, GPL[], and/or Think Finance in Pennsylvania, Virginia, Florida, Vermont, and Montana" between April and November 2017, which includes this case. (*Id.* ¶ 58.)

The contractual requirement in the GSA that at least two of the Think Finance Defendants indemnify GPL for losses incurred during litigation alone likely would suffice to make this case "related to" the Bankruptcy Case. *See Integra*, 92 F. Supp. 3d at 473 ("Even where none of the parties in the district court action are debtors in the bankruptcy proceeding, the action may be 'related to' the bankruptcy proceeding if the bankruptcy debtor has an indemnification agreement with the defendant in the district court action." (citing *Power Plant Entm't Casino Resort Ind., LLC v. Mangano*, 484 B.R. 290, 295 (Bankr. D. Md. 2012)).). However, GPL's counterclaim for indemnification against at least two of the Think Finance Defendants in the Bankruptcy Court even more clearly establishes that the "outcome in th[is] civil case '*could conceivably have an[] effect on the*'" Bankruptcy Case. *New Horizon*, 231 F.3d at 151. Accordingly, Plaintiffs' claims against GPL are "related to" the Bankruptcy Case.

### 4. The Interest of Justice Favors Transfer

Under § 1412, transfer is appropriate *either* in the interest of justice *or* for the convenience of the parties—a court need not find that both prongs are met to order a transfer. *See* 28 U.S.C. § 1412; *see also Hilton*, 532 B.R. at 274 ("[Section] 1412 is a disjunctive provision, allowing for transfer in the interest of justice *or* for the convenience of the parties . . . ."). The Court finds that the interest of justice strongly favors transferring this action to the Bankruptcy Court.

"The '"interest of justice"' component of § 1412 is a broad and flexible standard which must be applied on a case-by-case basis.'" *Hilton*, 532 B.R. at 274 (quoting *In re Manville Forest Prods., Corp.*, 896 F.2d 1384, 1391 (2d Cir.1990)). In evaluating whether the interest of justice weighs in favor of transfer under § 1412, courts look to several factors, including: (1) the economic and efficient administration of the bankruptcy estate; (2) the so-called "home court" rule—the presumption that the district hearing the bankruptcy case is the proper venue for related actions; (3) judicial efficiency; (4) the ability to receive a fair trial; (5) the state's interest in having the controversy decided within its borders; (6) the enforceability of any judgment; and, (7) the plaintiff's original choice of forum. *Id.*; *see also Coffey Creek*, 2010 WL 1849023, at *5 (listing the same factors). All factors do not receive equal weight, however, and the most important factor is "the economic and efficient administration of the estate." *Dunlap*, 331 B.R. at 680. "The party seeking transfer has the burden of showing by a preponderance of the evidence that either the interest of justice or the convenience of the parties would be served by the requested transfer." *Yolo*, 2018 WL 576316, at *2 (citing *Garlock Sealing Techs., LLC v. Waters & Kraus, LLP*, No. 3:14-cv-130, 2015 WL 1022291, at *1 (W.D.N.C. Mar. 9, 2015)).

In this case, the first, second, and third factors weigh heavily in favor of transfer, the fourth and sixth factors are neutral, and the fifth and seventh factors favor keeping the action in this Court. The balance, overall, strongly counsels in favor of transferring this case.

First and most importantly, the economic and efficient administration of the bankruptcy estate—factor one—will be served by transferring this case to be consolidated with the Bankruptcy Case. Plaintiffs have filed a class action adversary proceeding against the Think Finance Defendants in the Bankruptcy Court based on many of the same alleged facts as the Plaintiffs' Complaint in this Court. Resolving the claims against Rees and GPL in this Court

26

therefore would involve many of the same legal and factual determinations as will be necessary to resolve Plaintiffs' claims against the Think Finance Defendants in the Bankruptcy Court. And, given the indemnification agreements that Rees and GPL both have with Think Finance, which require certain of the Think Finance Defendants to indemnify Rees and GPL for the costs of litigation, litigating the same facts and legal contentions in this Court and in the Bankruptcy Court will result in duplicative legal costs, which would be paid from the bankruptcy estate. Moreover, if the Court kept this action here, Rees and GPL would need to litigate the substance of Plaintiffs' claims in this Court and separately litigate the issue of indemnification in Bankruptcy Court, also resulting in duplicative legal costs that would be paid from the bankruptcy estate. Accordingly, transferring this case so that it may be tried together with the similar claims in the Bankruptcy Court will promote the economic and efficient administration of the bankruptcy estate.

The presumption in favor of trying cases "related to" a bankruptcy proceeding in the court in which the bankruptcy is pending obviously favors transferring this case to the Northern District of Texas. The Court already has determined that Plaintiffs' claims against Rees and GPL are "related to" the Bankruptcy Case, and that case pends in the Northern District of Texas. Accordingly, the second factor weighs in favor of transferring this case.

Third, "judicial efficiency is served by litigating the same legal issue only once." *See Hilton*, 532 B.R. at 274. Plaintiffs' claims against the Think Finance Defendants, Rees, and GPL are based on Plaintiffs' contention that the loans made to Plaintiffs violated Virginia law. And two of Plaintiffs' four claims depend on their allegation that all defendants "worked together for the common purpose of making and collecting the usurious loans through the enterprises of Plain Green and Great Plain." (Compl. ¶ 29.) Thus, each of these issues will have to be resolved in

this case and in the Bankruptcy Court. Judicial efficiency favors a single court making those

determinations one time, rather than multiple courts ruling on the issues at different times.[26]

The fourth and sixth factors are neutral. No party suggests any reason that Plaintiffs

would be unable to receive a fair trial in the Northern District of Texas. And Plaintiffs concede

that "a judgment entered by the Northern District of Texas Court would have the identical force

as one here." (Pls.' Resp. Rees Mot. Transfer 11.) Accordingly, these two factors neither favor

nor disfavor transfer.

Both the fifth and seventh factors assessing the interest of justice, however, weigh in

favor of keeping the case in this Court. Plaintiffs chose this forum, and Virginia clearly has an

interest in protecting its citizens from conduct like that alleged in the Complaint. However, a

plaintiff's choice of forum is not entitled to as much deference when analyzing transfer under

§ 1412 as when analyzing transfer under 28 U.S.C. § 1404. *See, e.g.*, *Tapia v. Davol, Inc.*, 562

B.R. 765, 768 (S.D. Cal. 2016) (discussing § 1404 and § 1412 and stating that "'the former

provision [§ 1404] affords deference to the plaintiff's choice of forum whereas the latter

provision [§ 1412] carries a presumption in favor of the court in which the debtor's bankruptcy

---

[26] Plaintiffs argue strongly that "[m]oving the case would not foster judicial efficiency, it would thwart it." (Pls.' Resp. Rees Mot. Transfer 8.) Plaintiffs assert that more than "600,000 pages of documents " have been reviewed and used to prepare motions in this case. (*Id.* at 9.)

The Court acknowledges the diligent work the parties have put into this case. However, the Think Finance Defendants' bankruptcy petitions constitute a material change that the Court cannot ignore. The strong preference for deciding all issues "related to" a bankruptcy in the district in which the bankruptcy pends counsels strongly in favor of transferring this case to the Northern District of Texas.

Furthermore, the work the parties have done thus far would not be lost, and would contribute to the remaining issues being decided expeditiously. However, judicial economy is not served by two courts deciding the same issues, nor would it be served by all the parties litigating many of the same factual issues simultaneously here *and* in the Bankruptcy Court. The extensive factual overlap in the allegations before this Court and the Bankruptcy Court and the indemnification agreements between Rees and GPL and the Think Finance Defendants, virtually mandate that this Court serve efficiency via transfer so that the Bankruptcy Court can decide the remaining issues.

case is pending'" (quoting *Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Serv., LLC*, No. C–06–4693 JCS, 2008 WL 425638, at *1 (N.D. Cal. Feb. 14, 2008))). And, although Virginia has a clear interest in providing a forum for its citizens to challenge the sort of conduct alleged in the Complaint, that interest cannot outweigh the other relevant considerations.

The "important considerations of" economic and efficient administration of the bankruptcy estate, the interest of judicial efficiency, and the home court's presumptive suitability "decidedly favor" transferring this case to the Northern District of Texas. *See Dunlap*, 531 B.R. at 681. Virginia's interest in having this controversy decided here, and deference to Plaintiffs' original choice of forum do not outweigh those three factors, so the Court finds that the interest of justice weighs in favor of transferring this case to the District Court for the Northern District of Texas.

### III.  Conclusion

For the foregoing reasons, the Court will grant the Rees Motion to Transfer and the GPL Motion to Transfer. The Court will transfer this action to the Northern District of Texas.[27]  An appropriate Order will issue.

/s/

M. Hannah Lauck
United States District Judge

Date: 3|23|2018
Richmond, Virginia

---

[27] Because one of Rees's other motions seeks to transfer this case to a different venue, the Court will deny that motion as moot.